IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BRUCE KRAVEN, et al. | ) | |
| | ) | CASE NO.: 1:12CV01795 |
| Plaintiffs, | ) | |
| | ) | JUDGE DONALD C. NUGENT |
| vs. | ) | |
| | ) | |
| THE VILLAGE OF OAKWOOD, OHIO, | ) | |
| et al. | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |

This matter is before the Court on the Motion for Summary Judgment of Defendants The Village of Oakwood, Ohio and Gary V. Gottschalk on the claims of spouses Bruce and Christine Kraven (ECF # 21). The Kravens allege four causes of action arising out of the elimination of Bruce Kraven's position with the Village of Oakwood Police Department. Plaintiffs allege:

    (1)    42 U.S.C. § 1983 Violation of Substantive Due Process;

    (2)    42 U.S.C. § 1983 Violation of Procedural Due Process;

    (3)    Ohio Revised Code § 737.19 Wrongful Termination; and

    (4)    Promissory Estoppel.

Even when viewed in a light most favorable to Plaintiffs, the undisputed facts do not support Plaintiffs' causes of action. Consequently, and for reasons explained below, Defendants' Motion for Summary Judgment is GRANTED.

## I. FACTS

Plaintiff Bruce Kraven began employment with the Oakwood Police Department on June 30, 1986. He began working with Oakwood Village as a part-time dispatcher. He became a full-time patrol officer on August 1, 1986. Mr. Kraven was promoted to Lieutenant on March 21,

1989.

Plaintiff remained in the Lieutenant position until it was eliminated by the Oakwood Village Counsel effective August 5, 2011. Chief Robert Semik informed Mr. Kraven in July of 2010 that Village Council was considering the elimination of the Lieutenant position. Elimination of the position was contemplated to reduce funding in departments across the Village, including the Police Department.

Mr. Kraven claims that Chief Semik, now deceased, informed him that the elimination would be effective "immediately." Chief Semik subsequently informed Mr. Kraven that the law director, Paul Gau, who is also now deceased, had recommended to Council that they extend the position until August 5, 2011. At that time Mr. Kraven would have 25 years of service with the Ohio Police and Fire Disability Pension Fund.

According to Mr. Kraven, he verbally requested a hearing regarding the elimination of the Lieutenant position during both meetings with Chief Semik. Mr. Kraven further testified that the day after the meeting with Chief Semik, he met with Mayor Gottschalk and requested that he be able to continue to work until August 2011 and possibly longer. Following the meeting, Mr. Kraven never confirmed whether the Mayor had authority to extend his employment past the August 5, 2011 date. Nor did Mr. Kraven inquire who had authority to eliminate the position.

Council passed ordinance #2010-51 on September 28, 2010, eliminating the Lieutenant position from the department effective August 5, 2011. Mr. Kraven never attended any Council meeting during the eleven months between the passage of the ordinance and its effective date. Nor did he speak with any members of Council or any other Village officials concerning the status of the Lieutenant position.

On August 2, 2011, Mr. Kraven was given a letter from the interim Chief, Mark Garrett, to the Mayor, regarding the elimination of the Lieutenant position on August 5, 2011. Mr. Kraven's position had been eliminated by Ordinance #2010-51. However, he never asked for a copy of the ordinance prior to his deposition. Mr. Kraven testified that he did not make a written or oral request to Council for a hearing, and he never attended a Council meeting.

On August 5, 2011, Mr. Kraven left employment with the Village in accordance with the ordinance. The Village asserts that the elimination was in no way disciplinary in nature, a claim with which Mr. Kraven appears to agree. There is no evidence to support that the elimination was for disciplinary reasons.

Based on his August 5, 2011 departure from Village employment, Mr. Kraven elected also to retire on this date with the Ohio Police and Fire Disability and Pension Fund. Mr. Kraven claims that the elimination of his position also caused his termination from a part-time security position at Sam's Club. However, Mr. Kraven took no actions to determine if he could make arrangements to remain in the Sam's Club position.

Mr. Kraven testified that he had conversations with the Mayor and Finance Director regarding continuation of health care insurance so that his wife could have a knee replacement surgery scheduled for late August 2011. According to Mr. Kraven, the Mayor and Finance Director informed him that the health insurance would be extended so that Christine Kraven could have the knee replacement surgery. However, Mr. Kraven never asked for nor received any written information regarding how long the insurance could be extended.

Plaintiff Christine Kraven underwent surgery for a total knee replacement of the left knee, as scheduled, on August 22, 2011. Mr. Kraven's prior insurance coverage through the Village of

Oakwood paid for this surgery. Mrs. Kraven testified that, following the August 22, 2011 surgery, she followed her recovery regimen to the best of her ability, but required a second procedure in September 2011 to break adhesions that formed in the joint. The insurance that Mr. Kraven had from the Village of Oakwood paid for the second procedure as well. Following her September 2011 procedure, Mrs. Kraven was scheduled for a third procedure to take place in October 2011. Two days before she was to have the procedure done, she discovered that she was no longer covered by the Village of Oakwood health insurance. When she contacted the insurance company, she was informed that the insurance coverage ceased on October 1, 2011. Mrs. Kraven has not received the third procedure, claiming that this is due to lack of medical coverage. Both Plaintiffs testified that they did not fully investigate what other health insurance coverage was available to them, or what financial assistance may have been available. Mrs. Kraven's third surgery was not contemplated when Mr. Kraven's position was eliminated. Nor was it known what her recovery process would entail.

## II. LEGAL STANDARD

Defendants' Motion for Summary Judgment is ripe for review. Summary judgment under Rule 56 is appropriate where the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show "that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed .R. Civ. P. 56(a). "The moving party has the initial burden of proving that no genuine issue of material fact exists," and the court must draw all reasonable inferences in the light most favorable to the nonmoving party. *Vaughn v. Lawrenceburg Power Sys.*, 269 F.3d 703, 710 (6th Cir. 2001). When a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a

showing sufficient to establish an essential element of its case, summary judgment is appropriate. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

With regard to the non-moving party's obligation to set out specific facts showing a genuine issue for trial, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Williamson v. Aetna Life Ins. Co.*, 481 F.3d 369, 379-80 (6th Cir. 2007) (citation omitted). Rather, "Rule 56 allocates that duty to the opponent of the motion, which is required to point out the evidence, albeit evidence that is already in the record, that creates an issue of fact." *Id.*

Accordingly, the ultimate inquiry is whether the record, as a whole, and upon viewing it in the light most favorable to the non-moving party, could lead a rational trier of fact to find in favor of the non-moving party. *Matushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87. The Court's inquiry, therefore, asks whether reasonable jurors could find by a preponderance of the evidence that the non-moving party is entitled to a verdict. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

### III. ANALYSIS

Plaintiffs' statement of facts is identical to Defendants' version of events in all material respects. The following facts are undisputed:

(1) Plaintiff Bruce Kraven's position, Lieutenant, was eliminated by ordinance from the Village of Oakwood Police Department;

(2) Mr. Kraven's position was eliminated for financial reasons and was not related to disciplinary action;

(3) Mr. Kraven was permitted to remain in the position for a year after the Village of Oakwood Council originally planned to eliminate the position so that he could reach full retirement age; and

 (4) Even though the Village was under no obligation to do so, health insurance coverage was extended at the Village's discretion to Mr. and Mrs. Kraven to cover the knee replacement surgery that was scheduled at the time that Mr. Kraven's position was eliminated.

In view of the undisputed facts, all of Plaintiffs' claims fail as a matter of law. Defendants are entitled to summary judgment.

### A. Plaintiffs' Due Process Claims Fail As A Matter Of Law

As mentioned above, Plaintiffs assert both procedural and substantive due process claims under 42 U.S.C. § 1983. Neither claim is viable.

The Fourteenth Amendment to the United States Constitution contains the Due Process Clause, and prohibits states from "deprivin[ing] any person of life, liberty, or property without due process of law . . . ." U.S. CONST. Amend. XIV § 1. The Due Process Clause has both a procedural component and a substantive one. Procedural and substantive due process are distinct from each other because each has different objectives, and each imposes different constitutional limitations on governmental power. In brief, procedural due process is traditionally viewed as the requirement that the government provide a "fair procedure" when depriving someone of life, liberty, or property, while substantive due process protects individuals against certain government actions regardless of the fairness of the procedures used to implement them. *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992); *see also Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1216 (6th Cir. 1992).

Despite the different objectives of procedural and substantive due process protections, the elements of the procedural and substantive due process claims asserted by Plaintiffs here converge in that both claims require the deprivation of a liberty or property interest. To establish

a claim for a violation of procedural due process, a plaintiff has the burden of showing that "(1) he had a life, liberty, or property interest protected by the Due Process Clause; (2) he was deprived of this protected interest; and (3) the state did not afford him adequate procedural rights prior to depriving him of the property interest." *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). To succeed with a claim based on substantive due process in the public employment context, the plaintiff must show two things: (1) that he had a property interest/right in his employment, and (2) that the public employer's termination of that interest was arbitrary or capricious. U.S. CONST. Amend. XIV; *see also Silver v. Franklin Township Bd. of Zoning Appeals*, 966 F.2d 1031, 1036 (6th Cir. 1992) (substantive due process requires not only that the challenged state action was arbitrary and capricious, but also that the plaintiff has a constitutionally protected property or liberty interest). If a plaintiff fails to assert a property or liberty interest for purposes of procedural due process, the plaintiff's substantive due process claim also fails. *Taylor Acquisitions, L.L.C. v. City of Taylor*, 313 Fed. Appx. 826, 834 (6th Cir. 2009).

Whether a person has a "property" interest is traditionally a question of state law. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 430 (1982). The hallmark of property is an individual entitlement grounded in state law.[1] *Id.*

Plaintiffs here claim that Ohio Revised Code § 737.19(B) confers a property interest in

---

[1] Even if one assumes the existence of a property right, however, not every such right is entitled to the protection of substantive due process. While property interests are protected by procedural due process even though the interest is derived from state law rather than the Constitution, *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972), substantive due process rights are created only by the Constitution. *See McMaster v. Cabinet For Human Resources*, 824 F.2d 518, 523 (6th Cir.1987) (Nelson, J. concurring).

Mr. Kraven's continued employment because it allows for termination of village police officers only for just or reasonable cause.[2] In pertinent part, § 737.19(B) states:

> Except as provided in section 737.162 of the Revised Code, the marshal of a village has the exclusive right to suspend any of the deputies, officers, or employees in the village police department who are under the management and control of the marshal for incompetence, gross neglect of duty, gross immorality, habitual drunkenness, failure to obey orders given them by the proper authority, or for any other reasonable or just cause.

O.R.C. § 737.19(B).

Plaintiffs are mistaken in their assertion that O.R.C. § 737.19(B) creates a property interest upon which their due process claims may rely, because Ohio law establishes that a public employee does not have a property interest in a position that is eliminated for budgetary reasons. *State ex. rel. Robinson v. Dayton*, 984 N.E.2d 353, 358 (Ohio App. 2012). A civil service employee who by statute may be terminated only for cause may have a property interest in his or her continued employment in a position. However, that employee does not have a property interest in the existence of the position.[3] *See id.* (citing *Christian v. Cecil County*, 817 F. Supp. 1279, 1284 (D. Md. 1993)). *See also Upshaw v. Metropolitan Nashville Airport Authority*, 207 Fed. Appx. 516 (6th Cir. 2006) (former employee of metropolitan airport authority did not have property right in continued existence of his position in the context of a cost-driven

---

[2] Plaintiffs do not argue that a liberty interest is implicated by the elimination of Mr. Kraven's position.

[3] And unlike termination cases, where the employee's personal qualities and/or job performance are relevant and subject to questions of fact, bona fide job abolishments are directed toward the position (not the employee), do not carry a stigma, and are not administrative decisions. *Robinson*, 984 N.E.2d at 358.

reorganization of the airport).

In a case very similar to this one, the Sixth Circuit explained why a property interest does not attach when a police position is eliminated due to budgetary concerns. *Chaney v. Potsdam*, 105 Fed. Appx. 18 (6th Cir. 2004) (former members of village police force, whose positions were abolished for budgetary reasons, had no property interest in continued employment that was entitled to protection under the due process clause). In *Chaney*, the Sixth Circuit stated, "For a federal court to punish a local municipality for such an action would amount to an unwarranted expansion of federal power into matters of purely local concern." *Id.* at 24. Thus, absent evidence of "pretext or sham" a municipality is entitled to abolish a position without affording the employee due process. *Robinson*, 984 N.E.2d at 358.

The undisputed facts of this case demonstrate that Mr. Kraven's position was eliminated based on Village budgetary concerns. Further, there is no evidence that the proffered budgetary concerns are a pretext to deprive Mr. Kraven of his position for disciplinary or other reasons. Plaintiffs did not provide any evidence that the Village could financially support Mr. Kraven's former position and also effectively address its budgetary concerns. Moreover, there is no testimony or documentary evidence suggesting that Mr. Kraven's position was eliminated for disciplinary reasons. Mr. Kraven testified that he had a good relationship with the Mayor and the Chief of Police. (B. Kraven Deposition at 27.) Indeed, Mr. Kraven had little or no discipline during his 25 years of service.

There is no factual dispute that Mr. Kraven's position was eliminated as part of a reduction of the police force based on budgetary concerns, and not because of disciplinary reasons. Thus, O.R.C. § 737.19(B) did not confer upon Mr. Kraven a property interest in the

continued existence of the Lieutenant position. Because the Village's elimination of Mr. Kraven's position did not implicate a property right, it did not, as a matter of law, constitute of violation of either procedural or substantive due process. Accordingly, Defendants are entitled to summary judgment on Plaintiffs' due process claims.[4]

### B.  Mayor Gottschalk Is Entitled To Qualified Immunity

Plaintiffs allege that Mayor Gary Gottschalk is liable in both his individual and official capacities for violations of Plaintiffs' constitutional right to due process. As stated above, however, Plaintiffs have failed to demonstrate any constitutional tort. Absent a constitutional violation, Mayor Gottschalk is entitled to qualified immunity from suit for any role he played in the elimination of Mr. Kraven's position. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (qualified immunity shields governmental officials performing discretionary functions from liability insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known). Summary judgment is awarded to Mayor Gottschalk.

### C.  The Elimination Of Bruce Kraven's Position Did Not Violate O.R.C. § 737.19

Plaintiffs further allege that the elimination of the Lieutenant position with the Village violated O.R.C. § 737.19. As discussed above, O.R.C. § 737.19(B) confers upon the Village Council the right to suspend police department employees for cause. The section also details the disciplinary process to be followed.

---

[4] To the extent Plaintiffs argue a denial of due process based on the discontinuation of medical benefits prior to Mrs. Kraven's third (unanticipated) knee replacement procedure, their claim is equally untenable. Plaintiffs have not shown that the Village's (generous) extension of their medical benefits after the elimination of Mr. Kraven's position was anything but discretionary. A party cannot possess a property interest in the receipt of a benefit when the state's decision to award or withhold the benefit is wholly discretionary. *Med Corp., Inc. v. City of Lima*, 296 F.3d 404, 409 (6th Cir.2002).

Plaintiffs' claim is insupportable, because O.R.C. § 737.19 applies exclusively to disciplinary actions against a police officer, and not a municipality's decision to eliminate a police position. *Toth v. Village of Elmwood Place*, 485 N.E.2d 735 (Ohio App. 1st Dist. 1984). In *Toth*, the court held that a reading of O.R.C. 737.19 makes clear that it relates to the suspension or removal of village police officers for incompetence, gross neglect of duty, gross immorality, habitual drunkenness, failure to obey orders given them by the proper authority, or for any other reasonable or just cause. The court further held that, "the balance of the statute makes it apparent that the statute is addressed to the solution of disciplinary problems, not the quite separate problem of layoffs due to economic necessity. The sections of the code in question are simply inapplicable" to layoffs due to budgetary concerns. *Toth*, 485 N.E. 2d at 737.

The *Toth* court further held that a village may permissibly remove an employee to relieve a financial crisis. In doing so, the court relied on O.R.C. § 731.10, which states, "The legislative author may provide such employment for the village as it determines, and such employees may be removed at any regular meeting by a majority of the members elected to such authority. *Id*.

The undisputed evidence in this case demonstrates that the Village of Oakwood passed an Ordinance on September 28, 2010 eliminating Plaintiff Mr. Kraven's position of Lieutenant with the Police Department. The decision to abolish the position was based on Village financial constraints. The decision to eliminate the post was not disciplinary in nature. In fact, Mr. Kraven was permitted the accommodation of remaining in his position until he reached full retirement age, apparently purely at the discretion of the Village. Based on these undisputed facts, there is no triable issue regarding Plaintiffs' claim of wrongful termination in violation of O.R.C. § 737.19. Defendants are entitled to judgment as a matter of law on this claim.

D.   **Plaintiffs' Promissory Estoppel Claim Fails As A Matter Of Law**

Plaintiffs contend that Bruce Kraven was orally promised health care insurance coverage until the end of 2011. They attempt to establish a promissory estoppel claim based on alleged conversations that Plaintiff Bruce Kraven had prior to and shortly after his retirement.

Even when the facts are viewed in a light most favorable to Plaintiffs, their promissory estoppel claim fails. Implied and *quasi*-contracts are not enforceable against a municipal entity. *Wright v. Dayton*, 158 Ohio App. 3d 152 para. 40 (Ohio 2nd Dist. 2004); *Franks v. Bolivar*, 2011 WL 5838209 (N.D. Ohio Nov.18, 2011). Only express agreements properly adopted in accordance with the law are enforceable. *Kuivila v. City of Conneaut*, 2009 WL 3861008 (N.D. Ohio Nov. 17, 2009). Thus, even a factual dispute about how long Plaintiffs' medical coverage should have lasted pursuant to undocumented conversations does not preclude summary judgment, as there was no express contract extending medical coverage to cover all Mrs. Kraven's knee replacement surgeries, whether or not they were anticipated at the time Mr. Kraven's position was eliminated. Summary judgment is awarded to Defendants on Plaintiffs' promissory estoppel claim.

## IV. CONCLUSION

For all of the foregoing reasons, Defendants' Motion for Summary Judgment is GRANTED.

**IT IS SO ORDERED.**

*/s/ Donald C. Nugent*
DONALD C. NUGENT
UNITED STATES DISTRICT JUDGE

DATED: *July 25, 2013*